# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

SARAH JACKSON,

               Plaintiff,

v.                                          Case No. 3:20-cv-1060-MMH-JRK

IMMANUEL BAPTIST CHURCH,
SARAH GIOVANELLI, and
CAMERON GIOVANELLI,

               Defendants.

_____

## REPORT AND RECOMMENDATION[1]

### I.   Status

This cause is before the Court on two motions to dismiss.   First, Defendants Cameron and Sarah Giovanelli's Motion to Dismiss Plaintiff's Complaint (Doc. No. 16; "First Motion"[2]), was filed on November 6, 2020, to which Plaintiff responded in opposition on November 20, 2020, see Response to

---

[1]   "Within 14 days after being served with a copy of [a report and recommendation on a dispositive issue], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." Id. A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. See Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Order (Doc. No. 3), No. 8:20-mc-100-SDM, entered October 29, 2020, at 6.

[2]   The First Motion contains unnumbered pages.   Citations to it use the pagination assigned by the Court's Electronic Filing System ("CM/ECF").

Motion to Dismiss (Doc. No. 17; "Response to First Motion").   Second, Defendant Immanuel Baptist Church's Motion to Dismiss for Failure to State a Cause of Action and Improper Pleading or, in the Alternative, Motion for More Definite Statement and Motion to Strike and Incorporated Memorandum of Law (Doc. No. 18; "Second Motion"), was filed on November 23, 2020, to which Plaintiff responded in opposition on December 7, 2020, see Response to Immanuel Baptist Church's Motion to Dismiss (Doc. No. 19; "Response to Second Motion").

On April 2, 2021, the Honorable Marcia Morales Howard, United States District Judge, referred the motions to the undersigned for a report and recommendation regarding an appropriate resolution. See Order (Doc. No. 30). Upon due consideration and for the reasons stated below, the undersigned recommends that the motions be granted in part and denied as moot in part.

## II.   Background

Plaintiff initiated this action on September 22, 2020 by filing a Complaint (Doc. No. 1; "Complaint") against Defendants Immanuel Baptist Church ("the Church"), Cameron Giovanelli ("Mr. Giovanelli"), and Sarah Giovanelli ("Ms. Giovanelli").   The one-count Complaint is for "defamation of Plaintiff's character" in connection with a series of written posts "communicated to the world through the internet"—evidently on social media but not explicitly stated in the Complaint—by Mr. and Ms. Giovanelli.   Compl. at 1 ¶ 1, 9 ¶¶ 42-47; see

id. at 2-8 (posts).   According to the Complaint, Mr. Giovanelli, who was employed by the Church, "committed unspeakable acts of sexual abuse against [Plaintiff]" sometime prior to 2008.   Id. at 2 ¶¶ 10-11 (stating Plaintiff shared the story in May 2018 "[a]fter suffering in silence for over a decade").   After Plaintiff publicly shared the story in May 2018 and again in December 2018, Mr. and Ms. Giovanelli retaliated, beginning in May 2019, by posting a series of written denials of the allegations and "smear[ing Plaintiff]'s character."   Id. at 4 ¶¶ 20-21.   The Complaint alleges Mr. Giovanelli even "used information obtained confidentially in a counseling relationship with both [Plaintiff] and her family" in a "smear campaign designed" by all three Defendants "to destroy [Plaintiff's] reputation so that it could help paint her accusations about [Mr.] Giovanelli as false."   Id. at 8 ¶¶ 35-36.   Plaintiff states that Mr. Giovanelli worked in concert with the Church, that was led by "Greg Neal, the de facto sole leader," to "ensure their church, publishing company, and soon-opening college would not suffer financially from this blemish on its record."   Id. at 3 ¶ 14, 7 ¶ 30.   According to the Complaint, "[Mr.] Giovanelli finally admitted the truth when he pleaded guilty on December 4, 2019" to "charges of a fourth-degree sex offense and a second-degree assault for his actions against [Plaintiff]."   Id. at 7 ¶¶ 32-33.   This case followed.

### III.   Motions

**A.    Arguments for Dismissal**

All Defendants argue the Complaint violates Rules 8 and 10(b), Federal Rules of Civil Procedure ("Rule(s)"), and is an impermissible shotgun pleading because it "merg[es] separate claims for alleged defamation" against the Giovanellis and for vicarious liability against the Church.   First Motion at 4; <u>see</u> Second Motion at 8.   Responding to these arguments, Plaintiff contends the "coordinated effort by both the Giovanellis . . . and [the] Church is properly pleaded as a single action against all three for their joint conduct" and "each Defendant is properly on notice of the actions that give rise to their liability." Response to First Motion at 5; Response to Second Motion at 4.

In addition, all Defendants seek dismissal of the Complaint pursuant to Rule 12(b)(6), albeit raising different arguments in support of their motions. Mr. and Ms. Giovanelli seek dismissal because, according to them, the Complaint improperly relies on Mr. Giovanelli entering into an "<u>Alford</u> plea"[3] as evidence that his social media denials of wrongdoing are false.   First Motion at 4-5.   The Church seeks dismissal because the allegations as to it "fail to rise to the levels required to state a cause of action for vicarious liability."   Second Motion at 4; <u>see</u> <u>id.</u> at 4-8.

---

[3] "An <u>Alford</u> plea is a guilty plea where the defendant maintains a claim of innocence to the underlying criminal conduct charged but admits that sufficient evidence exists to convict him of the offense."   <u>United States v. Ramirez-Gonzalez</u>, 755 F.3d 1267, 1273 (11th Cir. 2014) (citing <u>North Carolina v. Alford</u>, 400 U.S. 25, 37-38 (1970)).

Responding, Plaintiff argues she has properly asserted claims for defamation as to the Giovanellis and has "alleged each of the false statements made by [Mr. and Ms.] Giovanelli."   Response to First Motion at 4-5.   Plaintiff further contends she properly pleaded a vicarious liability claim as to the Church because "[Mr.] Giovanelli proudly displayed his defamatory 'posts' were sent out in his capacity of an employee of the church"; he "published these posts during his employment with the Church with the goal to 'protect' the Church and the new college it was launching"; the Church had a "financial motive" Mr. Giovanelli was attempting to advance; and "[t]he Church was attempting to open the doors to a new venture with [Mr.] Giovanelli at the helm and [Plaintiff's] bringing these shocking, sexual misconduct [allegations] to light was a potential hazard to these plans."   Response to Second Motion at 4 (citations omitted).

**B.     Arguments for Striking Allegations and Claim for Punitive Damages**

The Church seeks to strike allegations related to Greg Neal—the non-party "de facto sole leader" of the Church, Compl. at 3 ¶ 14—that "imply[] his involvement in criminal activity."   Second Motion at 9.   According to the Church, "These allegations are in no way relevant to the allegations contained in the remainder of the Complaint, and in no way further the cause of action as stated."   Id.   The Church argues that "the very presence of these allegations will be prejudicial to Mr. Neal."   Id.

Responding, Plaintiff seems to recognize the allegations as to Mr. Neal may be "harmful" but contends they are relevant because the "case involves highly charged and shocking allegations of inappropriate sexual conduct [by Mr. Giovanelli] against [Plaintiff] and the great efforts . . . Defendants jointly undertook to prevent those actions from coming to light."   Response to Second Motion at 8-9.   Plaintiff alleges "the past pattern and practice of . . . Defendants is relevant to show what occurred in this case by the same Defendants."   Id. At 9.

Mr. and Ms. Giovanelli seek to strike the claim for punitive damages because, according to them, "the content of these social media posts do[es] not come close to meeting the requirements" of seeking punitive damages under Florida law.   First Motion at 6.   Responding, Plaintiff argues that the Giovanellis rely on the wrong standard in support of their request because Florida pleading requirements are not applicable in federal court.   Response to First Motion at 5.   "Even if this Court did apply the heightened pleading standards requested by Defendants," says Plaintiff, she meets the standard because she has pleaded "Defendants acted with evil intention to defame and injure in order to destroy Plaintiff in the eyes of the public[,] especially in light of the prosecutors evaluating Plaintiff's testimony and determining whether to bring charges based on her testimony"; and "Defendants were eager to destroy

Plaintiff and used the tools at their disposal to injure Plaintiff's reputation with the sole intention of destroying Plaintiff." Id. at 6 (citation omitted).

**C.    Argument for More Definite Statement**

The Church seeks a more definite statement that would "require [P]laintiff to set forth [her] causes of action more specifically to include factual allegations as to the elements of the cause of action asserted . . . as such information may lead to additional grounds for dismissal." Second Motion at 8-9. Plaintiff responds that the Church is impermissibly "seeking greater detail" than is necessary in a Complaint. Response to Second Motion at 7.

## IV.   Discussion

The undersigned analyzes the arguments regarding the shotgun nature of the Complaint and concludes that it is an impermissible shotgun pleading that must be dismissed without prejudice.   In light of this conclusion, the other arguments for dismissal and for a more definite statement, as well as the arguments to strike certain allegations and the request for punitive damages, are rendered moot and are not substantively addressed.

**A.    Legal Standards Regarding Shotgun Pleadings**

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 10(b) also provides that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."

There are four basic types of "shotgun" pleadings: 1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint" (the most common type); 2) "a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; 3) a complaint "that commits the sin of not separating into a different count each cause of action or claim for relief"; and 4) a complaint committing "the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1321-23 (11th Cir. 2015) (citations omitted). "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Id. at 1323 (citations omitted). When faced with a shotgun pleading, the Court is obligated to require the filing party to replead the claims. See, e.g., id. at 1321 n.10.

**B.  Analysis**

Defendants argue the Complaint impermissibly lumps them together in a single count, causing problems in deciphering which of them is responsible for which conduct.   First Motion at 4; Second Motion at 8.   They also contend that "separate claims for alleged defamation . . . [and] for vicarious liability" should not be merged.   First Motion at 4.

Although the Complaint's naming of all three Defendants in a single count may not be problematic in and of itself, the unlabeled count's incorporation of all of the factual allegations in the Complaint lead to a genuine quandary about the theory or theories upon which Plaintiff relies in bringing a single defamation count against the Giovanellis and the Church.   This is akin to the third and fourth types of prohibited shotgun pleading: not separating into different counts each cause of action or claim for relief (even though this is more precisely a problem with theories of causes of action); and asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions.   See Weiland, 792 F.3d at 1322-23. In addition, some of Plaintiff's contentions in response to the instant motions cast further doubt on the theory or theories upon which she relies.   A more detailed discussion follows.

To begin, the theory of defamation Plaintiff relies upon as to the Giovanellis is not entirely clear.   Generally, to state a cause of action for

defamation under Florida law (that all parties agree applies[4]) a plaintiff must plead: "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory."   Kieffer v. Atheists of Fla., Inc., 269 So.3d 656, 659 (Fla. 2d DCA 2019) (citing Jews for Jesus, Inc. v. Rapp, 997 So.2d 1098, 1106 (Fla. 2008)); see also Bass v. Rivera, 826 So.2d 534, 535 (Fla. 2d DCA 2002) (quoting Valencia v. Citibank Int'l, 728 So.2d 330, 330 (Fla. 3d DCA 1999)) (stating the required elements are: "(1) the defendant published a false statement (2) about the plaintiff (3) to a third party and (4) that the falsity of the statement caused injury to the plaintiff").   Most of the allegations in the Complaint suggest that Plaintiff is relying on the typical defamation cause of action.   In responding to the First Motion, however, Plaintiff appears to contend that she is relying to a degree on a defamation "per se" theory: "[i]n lieu of pleading and proving special damages, [she] can plead a claim for defamation per se if she can plead and prove that, as a woman, she was accused of acts of unchastity."   Response to First Motion at 4-5 (citing Klayman v. Judicial

---

[4]   See First Motion at 3 (stating this is "a defamation action governed by Florida substantive law"); Second Motion at 4 (relying on Florida substantive law); Response to First Motion at 4 (same); Response to Second Motion at 3-4 (same).   This is a diversity action so the Court applies Florida substantive law and federal procedural law.   See Ga. Dep't of Admin. Servs. v. Zhang, 819 F. App'x 684, 687 (11th Cir. 2020) (citing Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 259 n.31 (1975)).

Watch, Inc., 22 F. Supp. 3d 1240, 1247 (S.D. Fla. 2014)).   Given the disconnect between the allegations in the Complaint and Plaintiff's argument in response to the First Motion, it is unclear as to the Giovanellis whether Plaintiff is proceeding under the more general defamation theory, a "per se" theory, or both.[5]

As to the Church, Plaintiff's theory is also unclear.   In the Second Motion and in Plaintiff's response thereto, the parties seem to assume that Plaintiff is proceeding on a vicarious liability theory with respect to the Church.   See Second Motion at 4-5; Response to Second Motion at 4 (discussing vicarious liability theory).   But, the Complaint itself could be read to assert a direct defamation theory and/or a vicarious liability theory, as discussed below.

"Under Florida law, . . . an employer may be vicariously liable to third parties under the principle of respondeat superior for damages and injuries caused by its employee's negligent acts which are committed within the scope and course of his employment."   Morera v. Sears Roebuck & Co., 652 F. App'x 799, 800-01 (11th Cir. 2016) (alterations omitted) (quoting Bennett v. Godfather's Pizza, Inc., 570 So.2d 1351, 1353-54 (Fla. 3d DCA 1990)).   To establish such a claim, an employee's "conduct must: 1) have been the kind he

---

[5]   In addition, the case upon which Plaintiff relies indicates that slander per se, not published libel per se, is actionable defamation with accusations of unchastity against a woman.   See Klayman, 22 F. Supp. 3d at 1247 (citations omitted).   According to Klayman, "Slander is ordinarily confined to defamatory spoken words, whereas libel pertains to defamatory written statements."   Id. at 1247 n.2 (quotation and citation omitted).

was employed to perform; 2) have occurred within time and space limits of his employment; and 3) must have been activated at least in part by a desire to serve the master." Ayers v. Wal-Mart Stores, Inc., 941 F. Supp. 1163, 1168 (M.D. Fla. 1996) (citing Sussman v. Fla. E. Coast Props., 557 So.2d 74, 75-76 (Fla. 3d DCA), rev. denied, 574 So.2d 143 (Fla. 1990)); see also Morera, 652 F. App'x at 801 (citation omitted). "For an employer to be vicariously liable, the employee's conduct must in some way further the interests of the employer or be motivated by those interests." Morera, 652 F. App'x at 801 (alterations and citation omitted).

The Complaint's allegations regarding Mr. Giovanelli's conduct as it relates to respondeat superior are not a model of clarity, but they certainly support such a theory. The Complaint alleges, among other things, that Mr. Giovanelli "published the false statements . . . at [the Church's] behest in order to protect its financial interests." Compl. at 9. The Complaint also provides a blurb and professional photograph that were "[f]eatured prominently on each post and each page of the website" proclaiming that Mr. Giovanelli was "[h]appily married to Sarah G, the father of three incredible children, [and] Asst. Pastor at Immanuel Baptist Church of Jacksonville and Director of Berean Publications," id. at 7, implying that the posts were made in Mr. Giovanelli's capacity as an employee of the Church. Then, in the actual defamation count, the Complaint alleges Mr. Giovanelli "published the false

statements while he was acting in the course and scope of his employment with [the Church]."   Id. at 9.

But, there are other factual allegations that imply a more direct theory of liability as to the Church.   The Complaint states that the Church "participated, orchestrated, and coordinated the attacks on [Plaintiff] in order to protect not just one of their own but to ensure their church, publishing company, and soon-opening college would not suffer financially from this blemish on its record." Id. at 7; see also, e.g., id. at 4 (stating the Church "was in the final stages of launching a new 'college' and it had a large church, school, and publishing company; there was much to protect financially and ensure there would not be a stain on its reputation that would stop people from sending their children or dollars to [the Church]").   It is unclear whether these facts are intended to assert a direct theory of liability or merely to bolster the vicarious liability theory.

Given the multiple possible different theories of defamation liability as to each Defendant, to promote clarity and put Defendants on adequate notice of what they are to defend against, the different theories should not be commingled into a single, unlabeled count with all three Defendants named. See, e.g., Kercher v. Carnival Corp., No. 19-21467-Civ-Scola, 2019 WL 1723565, at *1 (S.D. Fla. Apr. 18, 2019) (unpublished) (finding a pleading to be impermissible when "[t]hrough a single 'negligence' count, [the plaintiff]

assert[ed] multiple, distinct theories of liability") (collecting cases); <u>Noon v. Carnival Corp.</u>, No. 18-23181-CIV-WILLIAMS/TORRES, 2019 WL 2254924, at *6 (S.D. Fla. Feb. 1, 2019) (unpublished report and recommendation) (citation, quotation and alteration omitted) (finding that "the amended complaint conflate[d] two different theories of liability—direct negligence and vicarious liability" and that "commingling direct and vicarious liability is an improper pleading practice"), <u>adopted</u>, 2019 WL 3886543, at *1 (S.D. Fla. Feb. 20, 2019) (unpublished order); <u>cf.</u> <u>Irvin v. NCL (Bahamas) Ltd.</u>, No. 20-20929-Civ-COOKE/GOODMAN, 2020 WL 5937900, at *2 (S.D. Fla. Sept. 28, 2020) (unpublished) (citation omitted) (finding a complaint was not a shotgun pleading because it was "not a situation where [the p]laintiffs . . . comingled distinct theories of liability").

Accordingly, the motions are due to be granted to the extent that the Complaint should be dismissed without prejudice as an impermissible shotgun pleading, and otherwise the motions should be denied as moot.  Plaintiff has not moved to amend the Complaint at this point, so the undersigned recommends ordering Plaintiff to move to amend the Complaint, if she wishes to do so, within fourteen days of the entry of an Order on these matters.

## V.   Conclusion

Based on the foregoing, it is

**RECOMMENDED**:

1.      That Defendants Cameron and Sarah Giovanelli's Motion to Dismiss Plaintiff's Complaint (Doc. No. 16) and Defendant Immanuel Baptist Church's Motion to Dismiss for Failure to State a Cause of Action and Improper Pleading or, in the Alternative, Motion for More Definite Statement and Motion to Strike and Incorporated Memorandum of Law (Doc. No. 18) be **GRANTED in part and DENIED as moot in part** as follows:

      A.      The motions should be **GRANTED** to the extent that the Complaint should be dismissed without prejudice as an improper shotgun pleading;

      B.      Otherwise, the motions should be **DENIED as moot**; and

2.      That Plaintiff be ordered to file a motion seeking leave to amend the Complaint, should she wish to do so, **within fourteen days** of the entry of an Order on the motions.

**RESPECTFULLY RECOMMENDED** in Jacksonville, Florida on August 4, 2021.

*James R. Klindt*

JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:

Honorable Marcia Morales Howard
United States District Judge

Counsel of Record

- 15 -